**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 2:11-cr-02206-DCN |
| vs. ) | |
| ) | |
| JONATHAN M. WARNCKE, ) | |
| ) | **ORDER & OPINION** |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant Jonathan Warncke's motion to dismiss the indictment based on an alleged violation of the Speedy Trial Act. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

On August 30, 2011, the City of Charleston Police Department ("CPD") responded to the Citadel Mall, where an employee at the Gold Buyers America store reported that Warncke, a manager at the mall's Foot Locker store, had passed him $200 in counterfeit currency. CPD notified the Secret Service of the report and the Secret Service also responded to the scene. Both CPD and the Secret Service interviewed Warncke.

On October 11, 2011, Warncke was charged in a one-count indictment for passing counterfeit currency in violation of 18 U.S.C. § 472 (2012). Warncke had his initial appearance and arraignment on October 25, 2011 and was released on bond.

On November 7, 2011, Warncke filed a motion for discovery. The court has not ruled on that motion.

On November 21, 2011, the government moved to continue the case until the next term of court because the parties had agreed that Warncke would participate in the Pretrial Diversion Program. On November 29, 2011, the court granted the motion and stated that "[s]aid continuance is excluded from the time in which this case must be brought to trial under the Speedy Trial Act." Order at 1, Nov. 29, 2011, ECF No. 18. The next term of court was scheduled for spring 2012.

On January 12, 2012, while the case remained continued, the government filed a motion for discovery, a motion for disclosure of expert witnesses, a motion to compel juror voir dire, and a motion to compel defendant's witness list. The court has not ruled on any of these motions.

On March 23, 2012, the court issued an ends of justice order that continued Warncke's case until "the April 2013 term of Court." Order at 1, Mar. 23, 2012, ECF No. 28. The court issued this continuance because the government had, by written agreement, agreed to defer prosecution of Warncke's case "for the purpose of allowing the Defendant to participate in the BRIDGE Program." Id. In its order, the court stated that "this period of delay is approved by the Court and is therefore excludable under the provisions of . . . the Speedy Trial Act of 1974." Id. The docket entry for the continuance order expressly tolled Warncke's speedy trial clock for the time period from March 23, 2012 until April 1, 2013.

On March 7, 2013, Warncke voluntarily withdrew from the BRIDGE Program, Charleston's federal drug court. On March 8, 2013, the magistrate judge overseeing the BRIDGE Program terminated Warncke from the program on the basis of his voluntary withdrawal. Order at 1, Mar. 8, 2013, ECF No. 79.

On April 15, 2013, Warncke filed a motion to modify the conditions of his release. The court referred the motion to United States Magistrate Judge Bruce H. Hendricks, who granted the motion on April 30, 2013.

On July 16, 2013, Warncke and his attorney attended the court's criminal pretrial meeting.

On July 17, 2013, Warncke filed a motion to travel that the court granted on the same day. Warncke traveled outside of this district from August 7, 2013 through August 13, 2013, in keeping with the court's order.

On October 4, 2013, Warncke filed the present motion to dismiss the indictment. The government opposed the motion on October 18, 2013. The matter has been fully briefed and is ripe for the court's review.

## II.   DISCUSSION

Warncke argues that the speedy trial clock has run out and that his indictment must be dismissed. The government responds that the speedy trial clock has not expired because it has been indefinitely tolled by Warncke's November 7, 2011 motion for discovery and by the government's four January 12, 2012 pretrial motions. Gov't's Opp'n to Mot. to Dismiss Indictment 5 ("[T]he discovery motions first filed in this case, that is November 7, 2011 by Warncke, and January 12, 2012 by the Government, tolled the Speedy Trial clock in this case until *at least* when the parties first appeared before the District Court on July 16, 2013 and arguably to the present.") (emphasis in original).

The Speedy Trial Act, 18 U.S.C. § 3161 et seq. (2012), ("the Act") provides that the trial of a defendant charged in an indictment "shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared

3

before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

The Act provides for a number of excludable delays, including delay resulting from the granting of a continuance based on a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In relevant part, the Act states that the following delays are also excluded:

> Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
> . . .
>
> (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
> . . . and
>
> (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C. § 3161(h)(1), (D), (H).

If a defendant is not brought to trial during the seventy-day period, and the delays are not excludable, the "indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). However, the district court has the discretion to dismiss with or without prejudice. Id.; United States v. Henry, 538 F.3d 300, 304 (4th Cir. 2008).

The real question in this case is whether the pretrial motions[1] filed in this case are governed by § 3161(h)(1)(D) ("subsection D"), § 3161 (h)(1)(H) ("subsection H"), or

---

[1] Federal Rule of Criminal Procedure 12(b)(2) defines a pretrial motion as a motion that "the court can determine without a trial of the general issue." Rule 16 motions for discovery,

4

both. If subsection D governs, then Warncke's Speedy Trial Act rights have not been violated because the pending discovery motions have continuously tolled the speedy trial clock since November 7, 2011. If subsection H controls, or if both subsections are read together, then Warncke's speedy trial clock has run out and his indictment must be dismissed.

Both the Supreme Court and the Fourth Circuit have addressed this issue. In Henderson v. United States, 476 U.S. 321, 329 (1986), the Supreme Court explained that:

> Subsection D,[2] written in the disjunctive, excludes time in two situations. The first arises when a pretrial motion requires a hearing: subsection D on its face excludes the entire period between the filing of the motion and the conclusion of the hearing. The second situation concerns motions that require no hearing and that result in a "prompt disposition."

The promptness requirement in subsection H was

> intended to provide a point at which time will cease to be excluded, where motions are decided on the papers filed without hearing. The point at which time will cease to be excluded is identified by subsection H, which permits an exclusion of 30 days from the time a motion is actually "under advisement" by the court. Without the promptness requirement in subsection D, a court could exclude time beyond subsection H's 30-day "under advisement" provision simply by designating the additional period as time "from the filing of the motion" through its "disposition" under subsection D.

Id. (internal citations omitted). The Fourth Circuit, analyzing the Henderson decision, further clarified that

> [S]ubsection H excludes thirty days for motions not requiring a hearing, from the time the motion is filed with all necessary supporting materials. If a hearing is conducted, then subsection D applies and "all time between

---

such as two of the motions filed in this case, are explicitly listed as "pretrial motions." Fed. R. Crim. P. 12(b)(3)(E).

[2] Subsection D was formerly codified at § 3161(h)(1)(F), and subsection H was formerly codified at § 3161(h)(1)(J). To keep this order from sliding into an alphanumerical morass, the court has substituted the current subsection titles into all quotations, and has made such updates without the use of brackets.

5

> the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is reasonably necessary" is excluded under the Speedy Trial Act.

United States v. Bush, 404 F.3d 263, 273-74 (4th Cir. 2005); see also United States v. Bates, 240 F.3d 1072, at *1 (5th Cir. 2000) (table) ("Where a pretrial motion does not require a hearing, Subsection D excludes the delay caused by a pending motion from the total seventy-day period. . . . However, the delay is limited to a 'prompt disposition' of the motion, which cannot exceed thirty days."); United States v. Bermea, 30 F.3d 1539, 1566 (5th Cir. 1994) (same); United States v. Elkins, 795 F.2d 919, 922-23 (11th Cir. 1986) (same).  Put another way,

> If the pretrial motion requires no hearing, subsection D excludes the period from the filing of the motion to the time the court receives all the papers it reasonably expects. Once the court has received the papers, the motion "is actually under advisement" and subsection H excludes up to 30 additional days thereafter, up to and including the date on which the court finally disposes of the motion.

United States v. Parker, 30 F.3d 542, 546 (4th Cir. 1994).  Sound policy reasons, and the intent of Congress, undergird these judicial rulings.

> As the Senate Committee on the Judiciary explained: "In using the words 'prompt disposition', the committee intends to make it clear that, in excluding time between filing and disposition on the papers, the Committee does not intend to permit circumvention of the 30-days, 'under advisement' provision contained in Subsection H. Indeed, if motions are so simple or routine that they do not require a hearing, necessary advisement time should be considerably less than 30 days."

Henderson, 476 U.S. at 329 (quoting S. Rep. No. 96-212, p. 34 (1979)).

In short, the speedy trial clock does not stop indefinitely while pretrial motions remain pending with the court.  Rather, when a pretrial motion does not require a hearing, the clock is only tolled for a maximum of thirty days.

The discovery motions that the parties filed in November 2011 and January 2012 are not motions that require a hearing, and are not the sort of motions for which the court could reasonably expect to receive additional briefing. Since this district's United States Attorney's Office has an "open file" policy, these motions are rarely, if ever, briefed or argued. Therefore, when calculating the number of days for which these motions tolled Warncke's speedy trial clock, the court must apply both subsections D and H.

Accordingly, the filing of the pretrial motions in this case tolled Warncke's speedy trial clock, but could toll the clock for no more than thirty days from the date the motions were filed. Though these motions remain pending, they cannot continue to toll the speedy trial clock through today. Even if the 30-day tolling of these motions could somehow be attributed to the time period after the court's ends of justice orders expired, Warncke's speedy trial clock has run out.[3]

---

[3] Warncke was arraigned on October 25, 2011. His speedy trial clock began running on October 26, 2011. United States v. Stoudenmire, 74 F.3d 60, 63 (4th Cir. 1996) ("In determining this 70-day period, the day of the event that triggers the [Speedy Trial Act] clock, i.e., the filing or opening of the indictment or the initial appearance, is not included in the calculation; the clock begins to run the following day.").

The clock ran for a period of twelve days, from October 26, 2011 through November 6, 2011. On November 7, 2011, the clock was tolled due to Warncke's filing of his discovery motion. The clock was further tolled from November 21, 2011 through April 1, 2013 by two ends of justice orders issued by the court. The court issued these orders to facilitate Warncke's participation in both the Pretrial Diversion and BRIDGE Programs. The clock ran again for a period of thirteen days from April 2, 2013 to April 14, 2013. From April 15, 2013 through April 30, 2013, the clock was tolled by the filing and disposition of Warncke's motion to modify conditions of release. The clock ran for a period of seventy-six days from May 1, 2013 to July 15, 2013. On July 16, 2013, the clock was tolled because the court held a pretrial conference in Warncke's case. On July 17, 2013, the clock was tolled because Warncke filed – and the court approved – a motion to travel. The clock then ran for a period of twenty days from July 18, 2013 to August 6, 2013. From July 18, 2013 through August 6, 2013, the clock was tolled by Warncke's court-approved out-of-district travel. The clock ran again for fifty-one days from August 14, 2013 through October 3, 2013, the day before Warncke filed his motion to dismiss the indictment.

In all, 172 non-excludable days have accumulated on Warncke's speedy trial clock.

What remains to be determined is whether Warncke's indictment should be dismissed with or without prejudice.

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2). The "the presence or absence of prejudice to the defendant" is another factor relevant to the court's determination. United States v. Taylor, 487 U.S. 326, 334 (1988).

As to the first factor, the court finds that Warncke is charged with a serious offense. Warncke is charged with passing counterfeit currency in violation of 18 U.S.C. § 472, a crime that carries a maximum penalty of twenty years' imprisonment. While Warncke allegedly passed a relatively small amount of counterfeit currency, the maximum statutory penalty associated with criminal charge shows that the charge is undoubtedly serious. This factor weighs against dismissal with prejudice.

As to the second factor, there is no evidence that the government acted in bad faith, or that its actions were anything "more than an isolated, unwitting violation." See Taylor, 487 U.S. at 339. This factor, too, weighs against dismissal with prejudice.

The third factor "requires the Court to consider the impact of reprosecution." United States v. Lewis, No. 09-mj-00133, 2010 WL 1727846, at *3 (E.D. Va. Apr. 28, 2010). "[T]his third factor cannot be viewed in isolation from the others. Whether a dismissal without prejudice will have an adverse impact on the administration of the Act or on the administration of justice depends, in large part, on the seriousness of the defendant's alleged crime and on the reasons for the delay." United States v. Wright, 6

8

F.3d 811, 816 (D.C. Cir. 1993). As Warncke is charged with a serious crime, and as there is no evidence that the government ran out his speedy trial clock purposefully or in an effort to gain a tactical advantage, the court finds that dismissal without prejudice would be in the best interest of justice.

Finally, the court considers whether Warncke would be prejudiced if the government were allowed to re-indict him for passing counterfeit currency. Warncke argues that the delay in this case has already resulted in prejudice "because of the difficulty of tracking down and interviewing witnesses that have left the area, and who have limited recall of the events of that day." Def.'s Mot. to Dismiss Indictment 8. It is true that Warncke was arraigned more than two years ago. However, the lion's share of delay in this case occurred because Warncke voluntarily participated in both the Pretrial Diversion and BRIDGE Programs.[4] That the passage of time now presents difficulties for Warncke is not a problem that can be wholly attributed to the government's Speedy Trial Act violation. If the government were to re-indict Warncke, Warncke would face the same passage-of-time challenges that he currently faces because of his stints in this district's rehabilitative programs. The court finds that Warncke would not be unduly prejudiced if the government were to re-indict him.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** Warncke's motion to dismiss the indictment, ECF No. 92, and **DISMISSES** the indictment without prejudice.

---

[4] Successful completion of either of these rehabilitative programs could have resulted in the dismissal of Warncke's indictment.

9

AND IT IS SO ORDERED.

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**December 10, 2013
Charleston, South Carolina**